## Case No. 10,609.

### In re OSTERHAUS.

[6 Am. Law T. Rep. 519.]

Circuit Court, E. D. Michigan. May 12, 1864.

"UNITED STATES COURTS" DEFINED — CONSTRUCTION OF ACT OF MAY 12, 1864—COMMITMENT.

1. A territorial court is a United States court within the meaning of the act of May 12, 1864 [13 Stat. 74].

2. A territorial court, being a court of the United States, is to be regarded as coordinate with the courts organized under the constitution.

3. In cases of imprisonment under section 1 of the act of May 12, 1864, no special process of commitment is necessary.

Osterhaus was convicted of the crime of passing counterfeit money in the district court of the Third judicial district of Wyoming territory, and by that court sentenced to imprisonment in the Detroit house of correction in this state and district for the period of ten years. He was so sentenced to that particular prison by virtue of a designation by the secretary of the interior made in pursuance of section one of the act of congress of May 12, 1864 (13 Stat. 74). The provision of that act, upon which any question arises, is as follows: "That all persons who have been or may hereafter be convicted of crime by any court of the United States— not military—the punishment whereof shall be imprisonment, in a district or territory where, at the time of such conviction, there may be no penitentiary or other prison suitable for the confinement of convicts of the United States, and available therefor, shall be confined during the term for which they have been or may be sentenced in some suitable prison in a convenient state or territory, to be designated by the secretary of the interior, and shall be transported and delivered to the warden or keeper of the prison by the marshal of the district or territory where such conviction shall have occurred," &c.

At the time Osterhaus was delivered to and received by the prison authorities, the only paper delivered with him as authority for his reception and detention there was a duly certified copy of the record of the aforesaid conviction and sentence. At that time, also, there had been no act of the legislature of Michigan, or other express legislative authority, for the reception and detention of United States prisoners in that particular institution.

A petition for habeas corpus was presented to the district judge of this district and his allowance of the same indorsed thereon, but for some reason unnecessary to inquire into, the writ was not issued. Thereupon, the legislature of Michigan, being then in session, an act was passed (Laws Mich. 1871, p. 24) authorizing the reception and detention in said house of correction of United States prisoners, and the continued

detention of all such prisoners as should then be held therein. A formal commitment, or mittimus from the territorial court, was also forwarded to and received by the superintendent of the prison. After this the petition for habeas corpus before mentioned, together with a supplement thereto stating the facts last above cited, was again presented to the district judge, and its allowance again indorsed. The writ having been issued and served, the prisoner was produced and a return made setting forth substantially the cause of detention as above stated.

The matter was exhaustively and ably argued by counsel. The points made by them were quite voluminous, and a detail statement of them is omitted. The questions presented for consideration, however, briefly stated, were as follows: 1. Is the district court for the Third judicial district of Wyoming territory a "court of the United States" within the meaning of the act of congress of May 12, 1864 (13 Stat. 74, 75)? 2. If so, can this court on habeas corpus inquire into the cause of commitment, it appearing that the same is in execution of a sentence of that court in a matter of which it had cognizance? or, in other words, can this court in that manner or in any manner inquire into the matter at all, and to what extent, it appearing that the imprisonment is in execution of a sentence of a United States court of competent jurisdiction? 3. Whether the question as to whether the necessary preliminaries, under the act of congress of May 12, 1864, existed to entitle that court to sentence a criminal to the house of correction at Detroit was not a question for that court to decide, and if an error has been committed in that respect, whether it is anything more than a mere irregularity which can be corrected only by application to that court? or, in other words, whether this court can go behind the judgment more in that respect than any other? 4. Whether a formal commitment was necessary in the first instance, or was a certified copy of the sentence and judgment sufficient? and if such formal commitment was necessary, then whether its issuance and delivery to the keeper of the house of correction before habeas corpus issued was sufficient?

Alfred Russell, for petitioner.
Mr. Swan, Asst. U. S. Dist. Atty., opposed.

LONGYEAR, District Judge. First. The Wyoming territorial court is not a court of the United States, within the meaning of the constitution establishing a judicial department, and therefore is not affected by laws of congress enacted in relation to courts established under that authority. Territorial courts are established under that provision of the constitution authorizing congress to make all needful rules and regulations concerning the territories of the United States. Clinton v. Englebrecht, 13 Wall. [80 U. S.] 434. But does this make those courts any the less "courts of the United States," within the meaning of the act of 1864? It was clearly not so considered by congress, because territories are expressly included in its provisions. And so, too, as to military courts, by excepting them from its operation. In passing the act of 1864, congress then clearly assumed that territorial courts and military courts both come under the appellation of "courts of the United States." Was this assumption authorized? And, in view of the decisions of the supreme court, in Clinton v. Englebrecht [supra], and the previous decisions in American Ins. Co. v. Canter, 1 Pet. [26 U. S.] 542; Hunt v. Palao, 4 How. [45 U. S.] 590; Benner v. Porter, 9 How. [50 U. S.] 235; Dred Scott v. Sanford, 19 How. [60 U. S.] 445; Orchard v. Hughes, 1 Wall. [68 U. S.] 73; and Freeborn v. Smith, 2 Wall. [69 U. S.] 173,—can it be given its full force and effect as it reads?

The effect of the decision in Clinton v. Englebrecht is that the laws of the United States in relation to the drawing of juries relate alone to courts organized under the judicial system, as established by the constitution. That the territorial courts are organized under a different system under the constitution, to wit, that relating to the government of the territories; and therefore, congress having made no provisions in relation to juries in those courts in the organic act, juries must be selected and empanelled in pursuance of the territorial laws. That case does not go to the extent of holding that those courts are not courts of the United States in any sense whatever, but its ruling is limited to this, that they are not courts of the United States within the meaning of that branch of the constitution providing for a judiciary branch of the government, and are therefore not affected by laws relating alone to courts organized thereunder. 13 Wall. [80 U. S.] 447. In American Ins. Co. v. Canter, 1 Pet. [26 U. S.] 542, the court, at page 546, say: "These courts are not constitutional courts, in which the judicial power conferred by the constitution in the general government can be deposited. They are incapable of receiving it. They are legislative courts, created in virtue of the general right of sovereignty which exists in the government, or in virtue of that clause which enables congress to make all needful rules and regulations respecting the territories belonging to the United States. The jurisdiction with which they are invested is not a part of the judicial power which is defined in the third article of the constitution, but is conferred by congress, in the execution of those general powers which that body possesses over the territories of the United States. * * * In legislating for them congress exercises the combined powers of the general and of a state government." That in this sense they are courts of the United States, I think can scarcely admit of doubt. Without further comment at this time, I

think it clear that: 1. When "courts of the United States" are spoken of without any further designation, constitutional courts only are meant, and the words cannot be extended to cover any other courts, although established by federal authority. 2. When that phrase is used with a further designation, and showing the intention of the law-making power to extend its meaning to those courts established by federal authority, under constitutional powers other than that for establishing a judicial department, such as those for raising and supporting armies, and for the government of the territories, the courts will give it such extended application. The act of 1864 does contain such further designation, and the Wyoming territorial court must therefore be held to come within the operation and effect of that act.

Second. It being settled that the Wyoming court comes within the provisions of the act of 1864, and that court being a court of superior jurisdiction, in that sense that jurisdiction is to be presumed and need not be proven (Kemple's Lessee v. Kennedy, 5 Cranch [9 U. S.] 185); all the other questions raised in the case except that relating to process of commitment, being questions necessarily involved in the rendition of the judgment under which Osterhaus is held in custody, this court being a court of co-ordinate jurisdiction merely, with no power to revise the judgment of the Wyoming court, cannot consider those questions at all, or grant any relief even if satisfied that irregularities had occurred in rendering the judgment. Osterhaus can obtain such relief only by application to the court in which the judgment was rendered, or by appeal to the supreme court of the territory. Ex parte Watkins, 3 Pet. [28 U. S.] 201; In re Griffin [Case No. 5,815]; Hurd. Hab. Corp. 331, 351, and cases cited; Cooley, Const. Lim. 347, and note 3; Organic Act Wyo. T. (15 Stat. 181), last clause of section 9.

Third. As to the process of commitment. No special process or warrant of commitment was necessary. The record of the order or judgment of commitment was sufficient. An exemplified copy of such record is sufficient authority for the jailer or keeper of the prison, and this the superintendent of the house of correction had. Hurd, Hab. Corp. 400, and case cited. Even if such formal process were necessary, however, it was furnished to and was held by the superintendent in time, and was held by him when the supplemental petition was presented and the habeas corpus finally allowed and issued, although it was not delivered to him at the time Osterhaus was placed in his custody, nor until after the original petition had been presented. It results that the writ of habeas corpus must be dismissed and the prisoner remanded.

An appeal having been taken, the petitioner's counsel made the additional point before the circuit judge, that the act of congress of May 12, 1864, authorizing imprisonment out-side the district in which the offence was committed, is unconstitutional, and the sentence to such confinement is a nullity. The circuit judge affirmed the decision of the district judge, as follows:

EMMONS, Circuit Judge. It is to me a source of regret that the state of my health renders impossible the preparation of a written opinion in this case. The argument has been exceptionally elaborate and able, both on the part of the petitioner and of the government, and I approach the decision of the questions involved with strong confidence that the exhaustive researches of counsel have omitted nothing which could throw light upon those questions.

In the reasoning, and with the conclusions reached by my Brother LONGYEAR I entirely concur. These are, as here briefly summarized, negations of the points made by petitioner's counsel, and with the district judge, I hold,

First. That the territorial court of Wyoming is a United States court within the meaning of the act of May 12, 1864. See American Ins. Co. v. Canter, 1 Pet. [26 U. S.] 542; Dred Scott v. Sanford, 19 How. [60 U. S.] 445; Hunt v. Palao, 4 How. [45 U. S.] 590; Benner v. Porter, 9 How. [50 U. S.] 235; Freeborn v. Smith, 2 Wall. [69 U. S.] 173; Orchard v. Hughes, 1 Wall. [68 U. S.] 73. There is nothing adverse to this conclusion in Clinton v. Englebrecht. 13 Wall. [80 U. S.] 444. The broad language there used must be construed with reference to the authorities cited for the proposition in support of which they are adduced. The case simply reaffirms those authorities.

Second. The second point made by the petitioner's counsel—want of authority in the superintendent of the Detroit house of correction—I likewise hold, with the district judge, to be an objection which petitioner cannot raise. The state of Michigan, whose officer the superintendent is, can alone question the legality of his action in the reception and detention of a person convicted of crime outside of the limits of the state. The act of 1871 [16 Stat. 398], extending the power of the superintendent to the reception of convicts from other states and territories, and the express authority therein given for the continued detention of persons before received from such other states and territories, is a legislative ratification of the action of the superintendent.

Third. The amendatory act of the legislature of Michigan (Sess. Laws 1871) was passed after the sentence and commitment of petitioner, and authorized the superintendent of the house of correction to receive and keep all persons convicted of crime by any court of the United States. It is claimed that such legislation is as to petitioner ex post facto. The position is untenable. The relator's confinement is under the authority of the United States. The state law neither fixes the penalty of the offence of which he stands con-

victed, nor in any manner affects the procedure, nor alters the sentence. In brief, no definition of ex post facto laws would embrace the act in question in its effect upon the detention of petitioner in this case.

Fourth. The absence of a formal commitment at the time of the delivery of the petitioner by the territorial marshal cannot impair the legality of his detention. The warrant of commitment is merely the evidence of the authority for his imprisonment under the sentence. It is a sufficient answer to this point that a certified copy of sentence was produced at the return, to evidence the legality of the detention. A merely formal defect in the warrant of commitment capable of amendment, would not authorize a discharge. In such case a petitioner would be remanded until the amendment of the process.

Fifth. No authority is cited by counsel for the proposition that the imprisonment of petitioner beyond the jurisdictional limits of the territorial court is unconstitutional. The authority of congress to designate any place of confinement within the United States is not inhibited by the constitution, nor has it ever been questioned, so far as I have been able to learn. Frequent instances of the exercise of such a power were mentioned at the bar.

Sixth. On behalf of the United States, it is argued that the judgment of the territorial court is conclusive upon this court, and cannot be here inquired into. Without doubt the sentence of that tribunal is res adjudicata here. Ex parte Watkins, 3 Pet. [28 U. S.] 193. Neither this court nor any other court not clothed with revisory or appellate jurisdiction over the tribunal whose judgment is sought to be vacated can revise the judgment of a court of record of competent jurisdiction through the instrumentality of the writ of habeas corpus. Nothing in the late decisions of the supreme court has modified the doctrine laid down in 3 Pet. [28 U. S.]. Ex parte Callicot [Case No. 2,323]. Ample provision is made in the organic act creating the territorial government of Wyoming, for the review of the decisions of the territorial district courts by appeal and writ of error, and relief from their judgments must be sought in the manner, and from the tribunal in whom congress has vested revisory jurisdiction.

I have thus briefly reviewed the grounds upon which my judgment is based, that I might not seem to have overlooked any of the arguments so forcibly urged for the discharge of relator. I can add nothing to the cogency of the opinion of the district judge, denying the discharge of petitioner. That opinion is here adopted and affirmed. Petition denied.